You may be seated. Mr. Hawkins, when you're ready. Yes, your honor. Good morning, your honors, and may it please the court. I'm Josh Hawkins here on behalf of appellant Dawn Lusk, who's here today. She was injured when she went to the Salem, South Carolina, post office by a post office employee. We filed claims under Bivens and the Federal Tort Claims Act. Our case was dismissed, and I think the main issue before the court today is the Federal Tort Claims Act, so that's primarily what I'll speak to. The question before the court is... You just don't have a remedy. I've been studying your case back and forth, and it's an odd situation. You've got an assault and battery that the Federal Tort Claims Act says you're going to get anything, and then you've got the Westfall Act that can't go to state court. I can't figure out how you got a remedy. I've been studying this instance. I did Federal Tort Claims Act back when I was in the Navy, and it was an interesting case to me. You can take every fact your client says is true. She goes in there, and she gets beat up by one of the postal workers there, but everything I'm seeing here, if you can't make a Bivens claim, and that is a long shot, because you've got to go due process, substantive due process. I don't know where you're going to get there. But anyway, I wanted you to hear that up front so that you could have that in the context. Maybe you can help to get us there, but I feel for you because I can't figure out in the world why your client does not have a remedy, not in state or federal court, in light of the existing law. Your Honor, that is exactly, and I'm glad your Honor brought that up because that is exactly what our jurisprudence has said. If there's not a remedy, in one of these situations where there's not a remedy, we've got to find one. Chief Justice Marshall said that in 1803 in Marbury, and I didn't think I'd ever have to actually use Marbury, but I had to go back and read it because of this case. The Bivens cases, and your Honor pointed out that that's an extraordinarily uphill battle, and I get that. I don't think it should be because I think if a federal agent violates someone's constitutional rights— What we've got here, I think that would be hard to get. Maybe if my colleagues could figure it out, I'd go with them, but that's a hard one. But then you're left with the Fourth Federal Tort Claims Act. That's done. Even with Egbert and Rodriguez, even with the rulings that were in those cases, they look back to Carlson and Davis and Bivens, and the sentiment is always the same. If there's not a remedy under one avenue, you should find a remedy in some avenue. And so I think, Your Honor, there is a way to get there. Number one, I don't think any court has grappled with whether or not this postal worker, Peppers, had the mental requisite to form a battery. And the cases that my— What was that? Say that statement, had the requisite to do it. The mental requisite, in other words, the mental element of battery. I don't think any case has looked at, is there even a battery? Because if she subjectively was so unreasonable, and it appears that she was, because most or all of this is uncontested, if she was so unreasonable that she thought that he had to use this level of force or any force at all on a customer, if she subjectively believed that, no matter how unreasonable, then there's not a battery. My colleague cites the Talbert— Then what is it, negligence? Or something that fits with Biddeford? It would still be negligence or recklessness because you still have duties there and you still have a breach. But if you don't have the mental requisite to complete the battery, you don't have a battery. That's what the second rate statement of tort says. And Talbert tells us when we did this analysis, that's where we have to look. My colleague cites to Talbert, rightfully so, when we look at the nature of the tort, we have to look to the restatement. That's what Talbert tells us. Let me—and I'm going to turn this loose. But you're saying that April Peppers didn't have the mental capacity to commit a battery. We've never gotten to ask her. We didn't get to do discovery. Now, certainly in ways she's described, she sounds like she's something else. Well— I mean, we have criminals that come through here all the time, that same kind of person. I don't know what you're going to pull up. I've never seen that where a battery has not been—I mean, in theory, it's there. But I haven't seen a criminal case where something like this, where you get off because you don't have the mental capacity to commit a battery. You did something else. Under these facts, she came from behind this. The supervisor opens the door. She goes in and beats this woman up. Caused dental injuries. Knocked her to the ground. Kicked her. Violated her. And she has a history.  Yes. Violated my client's constitutional rights, right to bodily integrity, excessive force, all that. And importantly, to Your Honor's point, Ms. Peppers was never prosecuted criminally. So there's no criminal battery. She was not terminated from her job. There's a video of this that we never got. She could be prosecuted criminally. She probably should have been. Could be. I'm not sure the statute would run on that. You can't be. We don't have—yeah, we don't have it. But she could be. If you don't think the prosecutor does it, most states got a way in which you can do it yourself. But I'm not sure that—you have to turn to the general assembly to agree to do it. But I don't see what keeps her from being criminally prosecuted for beating this woman up. Right. But that's not the issue in this case. This is a civil case. Yes, Your Honor. I would say that we at a minimum should be able to go back, do discovery, and do some discovery on this mental representative. And let me ask her, were you intended to act in defense of merchant or the property, which was the workplace, or yourself? And see what she says, because all of those are complete defenses to battery. There wouldn't be a battery there. Now, if there is a battery, if the court tells us, you know, as my colleague Rockley points out, if it sounds in battery, if there's a battery anywhere in the mix, you've got to look at that. Okay. Well, then that would put us in the proviso. And we don't argue a lot about the proviso in the complaint because we say she didn't have the mental requisite. But if she wants 2680-H, she's got to take all the parts of 2680-H, which include the proviso that you can proceed with an intentional tort against someone who has investigative authority. What the United States Code says at 39 U.S.C. 603, I believe, is that any postal worker has this authority. That is different from 39 CFR, I think it's 233.1A, which says postal inspectors have certain authority. They can carry guns, make arrests. Congress used specific language in the code. It says any postal worker. And if we look at the proviso, it doesn't just say law enforcement. It says law enforcement or if you have an investigative ability or authority. And that's exactly what all postal workers have. And it's not just a little bit. They can search any car containing a package which has lately been to the post office. They can search offices, stores. They have a lot of investigative ability. And so, Your Honors, I don't think we don't know that there is a battery, so at the minimum we should be able to do discovery on that. But if the government pushes us into 2680H, we have to look at the proviso, and we can proceed on a battery claim because Ms. Peppers and Mr. Merchant both have investigative authority. Now, we get into at this juncture. What did you allege in your complaint? We alleged negligence and recklessness because we didn't want to get caught up on the 2680H exclusion. My colleague will say that even if you get by that, then you're foreclosed by 2680A, which, as the court knows, is discretionary function. But there's no discretion to violate the Constitution. I mean, this court has said that in Medina. Well, really every case, even Pornoma, where the plaintiff doesn't win, the court says you can't violate guidelines or statutes or the Constitution. We describe constitutional violations, and the guidelines say that they can't engage in anything that's notoriously offensive or criminal or it lists bullying and violence specifically. So, I guess what I'm sort of grappling with this. You know, during the week we hear a lot of cases, so I can forget stuff whether the district court did it or not. Did you argue any of this before the district court or in your brief? Well, Your Honor, as to that, we say that we don't have to argue about the proviso because we don't say we committed a battery. If they push us there, we say this is the operation of the law, that 603 says what it says about postal workers. But if the court needs a way to look at that anyway, some authority, the Medina court said it looked at a situation where the government hadn't raised one of the exceptions of 2680. And it said even though the government didn't raise that, we're going to look at it because it has to do with consent to be sued and it has to do with sovereign immunity. And if all that didn't work, you could go back and get the authority to look at it from this court's case and Omar, which relied on Milano, and said if there's going to be a fundamental unfairness, and I can't imagine a more fundamental unfairness than this, then we can use our discretion and we can look at something that wasn't raised. So that will be our response to that, Judge Winn. I don't accept Mr. Hawkins, obviously, you know, you're dealing with the battery, the language of it cannot be something that arises from a battery. Correct. So in other words, you're trying to remove the battery. But under these facts, how do you remove the battery when, as you pled, she was using profanity, she meaning Peppers, as she came out of the gate? And then she then proceeded to pummel your client in a horrible, severe way. What's missing from the battery? And I know what just was judged. I understand that you didn't say that she didn't have the capacity, she didn't have the requisite state of mind for a battery. Yes. Because she could have been defending herself, those kind of things. I mean, not capacity, but it's a requisite. But how so when you notice she was cursing as she went toward her, and she then beat her up? How do you . . . where's the disconnect from being a battery, assault and battery? I'm glad you asked that, Judge Gregory. I don't think it's any different if she was acting in defense of her workplace herself or merchant, others. It would be no different than a man hears a, you know, he's got his wife and his baby in his house, and he hears a noise and he goes outside with a bat. He's going to use some cuss words. I would. And so the fact that he's cussing and carrying on or whatever don't mean that he is not defending his family. It's that subjective belief. But the problem is, though, the context here is the lady is just making an inquiry about her mail. She said, look, I have a box here, and it's not enough in there. I know it should be more mail in there. Can somebody please help me? So it is unlike your hypo where there's a threat to his family. You're absolutely right. You might be cursing more than that when you put the Louisville Slugger on. But here, on both ends, there's nothing that would prevent this from being a battery in a sense because your client didn't do anything wrong. I mean, she was just trying to be a customer, trying to get her mail. She comes out cursing, and she goes straight to pummeling her. What could possibly be missing from a battery, assault and battery? The mental requisite to do it for an unjustified purpose, and we don't know what it was because we haven't gotten to ask her. We never got to take her deposition. This was dismissed at the motion-to-dismiss stage. So we'd like to ask her. And if they want to then make a summary judgment motion, they can make that motion. But, again, we think we get in the proviso, so we think we win either way. And I will say this just because I'm getting a little short on time, and I want to make this point. Yeah, go ahead. Your Honors, as the court will know, Sheridan, the Sheridan case, sort of eroded Shearer in those other cases. And what Sheridan said is there are at least some contexts where there can be a battery in the mix and there can still be a recovery. Now, that sprang from an independent duty, of course, under either I think it was Virginia law, maybe Maryland law, but either way, where you have an independent duty that has nothing to do with the battery itself, you can proceed. And so I think we have that here, too, because Merchant undertook a duty when he goes around and he mocks, berates, whatever he does. He denies her medical help. You know, under our jurisprudence in South Carolina, the case of Stonkey v. Department of License and Labor, you can't undertake and then act recklessly. So he goes around and he undertakes to interact with her, but he won't let her use the phone. She's on the floor with dental injuries and punched and kicked and beat up. He won't let her do anything. Grabs her by the ankles as if he's going to drag her, but then he doesn't. And then he won't let her make a call or call somebody for her. But the facts are horrible. I agree with you on that. But I was wondering, and I guess the law, I looked at it, too. It seems very tight on it, but it seems like to me you can put a straight face, whether you win or not, and say, well, she was not acting in the scope of her employment. She was working back there behind that desk, and she came from behind the desk out into the open public area, which is not her employment. You didn't make this argument, but I'm saying if she's not in the scope of employment, then Westfall is kind of out of the whole deal. You might get the state court on the thing. But you didn't argue at that point. I admit, you know, and I appreciate where you're going with this, that you want to discover to see that battery is not battery. That's probably a very uphill battle to win. I mean, any day of the week you can admit that. But you're making an argument. I got you. You've got to do this because you say, and this business about there's got to be a remedy, I don't know about that. I mean, certainly Bivens, I just don't think is available, and that would be the remedy you could get in the federal type thing, go for some type of constitutional right. Bivens just doesn't look like to me it's available. So, I mean, it puts you in a conundrum here. It does. I was wondering why you didn't at least broach the scope of employment. Is it that it's just that's so much out of consideration that it's not even plausible? Well, we challenged the Westfall certification. We didn't want the individuals dismissed, obviously. But when the government submitted that certification, Judge Coggins, you know, he granted that, he substituted them in, and we said, okay, well, we'll proceed. So you conceded. Okay. We'll proceed this way. My time is up. Would the court allow me to make one point about the Martin case? Yes, you may. Thank you, Your Honor. I just want to point out because I think this is important for the analysis that, you know, courts have grappled with the interplay between subsection A and subsection H, and the Martin case that came out last year addressed a supremacy clause defense, and so it didn't really look at if you clear A, do you then have to clear H? But it did acknowledge that it's a problem. And so to the extent that that matters for the appeal, I just want to say I think we cleared both. In the Fifth Circuit, if we cleared the intentional act exclusion, we would be able to go forward. In the D.C. Circuit, we would have to clear both, and the Eleventh Circuit, of course, takes a completely different approach where they read the proviso into all the exceptions. That may be an issue, but I don't think the court has to reach that because I think there's no discretion to violate the Constitution. I think there's not a battery, and if there is, I think we're in the proviso. So that's my argument, Your Honors. Does the court have any more questions? I think we have some time. Thank you. Ms. Mittal? Good morning, Your Honors, or good afternoon. May it please the Court, Orgen Mittal for the government. As Your Honors have recognized, all of the tort claims in this case arise out of allegations of assault or battery. Those claims are barred by the enumerated torts exception in the Federal Tort Claims Act. This Court has repeatedly held in cases like Billups, Talbert. That's the end of this argument, isn't it? Because the assault and battery is an exception, can't go to state court because of the Westfall Act scope of employment. My question to you is, I know scope of employment comes in the Westfall Act context, but in the Federal Tort Claims Act, does it apply in an instance in which one is not working within the scope of employment? Your Honor, that's part of the Federal Tort Claims Act, but it's not an inquiry that the appellant has challenged here or that's in contention here. In other words, if Ms. Peppers comes from behind this stand and then she's out of the scope of employment, I'm not saying she is because I think case law pretty much says she probably is, but if she's out of it, what the Federal Tort Claims Act, I guess it's the same thing. It's like assault and battery. I guess it's an exclusion or exception, isn't it? Because it's not going to apply then if you're outside the scope of employment. I think as Your Honor pointed out, she probably was in the scope of employment here and the department certified as much in the papers in district court where this case was removed. I think if she weren't in the scope of employment, it would be a question about the propriety of that certification under the Westfall Act and then whether it was properly removed and whether the United States was properly substituted. But it's the Westfall Act that gives them the immunity, right? That's right, Your Honor. So that's the one you want to find, she's not in the scope of employment, then you can bring the state action if she's not. It's part of the certification procedure under the Westfall Act before the FTCA kicks in and now that we're in federal court. But to challenge that, they would have had to appeal the certification. They would have had to challenge the certification at some point in district court or magistrate court, that's right, Your Honor. But that's not at issue here. And so I think, like you said, under South Carolina law, she probably was acting within the scope of her employment. In fact, that's what the department certified, that she was acting within the scope. So that's not at issue. It wasn't at issue in district court. Because she has no remedy. She has no remedy under the Federal Tort Claims Act, Your Honor. She has no remedy civil that anybody can think of. Maybe a criminal action could be brought, but no civil action. Can you plausibly tell me any civil action she could bring under these facts? Your Honor, I don't have a civil cause of action at hand because we're just looking at the claims that she's brought in her complaint. There's none. You can't bring it in state because of the Westfall Act and you can't bring it in federal court because the Federal Tort Claims Act is the waiver of sovereign immunity, and that does not apply. There's none. That's right, Your Honor, that there's nothing under the Federal Tort Claims Act, and we as the government are just looking at it. There's none in the Federal Tort Claims Act anywhere else in the universe, except unless you can figure out vivids, but that doesn't apply. I'm not being argumentative. I'm just getting to the point that these are horrible cases. Something is wrong in terms of how this statute is set up. I can't possibly believe it was meant that a postal worker could come out and violently assault a customer under these facts, and that customer has no remedy civilly. Now, criminally, you could have the district attorney do it for the state or the U.S. attorney do it, and none of that's happening, which sounds there must be something else for it not to have happened because it's a horrible set of facts, at least what's presented to us. As presented to you, Your Honor, that's right. These are the allegations in the complaint, and they haven't been tested or proven. And so the United States would presumably present its version of the facts if this case were to proceed past the pleading stage, but the Federal Tort Claims Act as Congress wrote it. I wasn't talking about the pleading stage. I don't think it's going to proceed here civilly past the pleading stage. I'm talking about the criminal side of it. There must not be enough there for them to bring an action, or some reason they won't bring a criminal complaint against this individual here. I'm not talking about this case. You see what I'm saying? I think that there's no remedy for it. And maybe the only remedy then could be if you went criminal, she might could get restitution of some sort. But that's a whole different thing. I'm just trying to figure this out. He makes the argument there's no remedy. Well, maybe the criminal remedy is the only one that's there, but it's not happening, which is outside of this. But from your perspective, I'm hearing that. I think you're spot on. I think that's, I mean, for what it's worth, I think these allegations fall within the heartland of the intentional tort exception, the enumerated tort exception, as Your Honor outlined. And Congress wrote that exception. And the first few words of that exception carve out any allegations arising out of assault or battery. So as Your Honor pointed out, these claims fall squarely within that exception. I can't speak to the criminal side of things, because I don't know sort of the judgments of the local prosecutors and sheriff's offices made here. But it's true that these allegations are sort of squarely within the scope of the enumerated tort exception, as to both defendants and as to the United States. I'm happy to answer any other questions this court has on those issues. I'll make a couple of just quick points. As I think Your Honors recognized, there weren't any arguments with the law enforcement proviso raised in district court before the magistrate court or the district court. I'm not sure whether that would apply here to these particular employees. The arguments about Medina were similarly not raised before the district court in any objections to the magistrate judge's report and recommendation. Same with sort of the Martin arguments, which haven't been raised in this court either. And then as to the Sheridan arguments, I think what's important here is sort of the district court recognized that there's no independent duty that the plaintiff has identified, that's sort of independent of the United States' relationship as an employer with these particular employees. All of the specific provisions that have been outlined only govern the employer-employee relationship. And even Sheridan, both in the Supreme Court and in this court's cases on remand, decision on remand, recognize that any sort of duties like that are properly excluded within the enumerated torts exception. And so there's no relief via that very narrow exception as well. But counsel, what are the facts? Well, we'll play it this way in terms of, though it's not a hypothetical, it really is just sort of a somewhat of a counterfactual in terms of what's played, that the same thing that happened happened, but instead the suit was for the humiliation that the plaintiff suffered and provided by the mere shock, you know, shock in the conscience that you'd be in a post office and someone just would open the door and have this person in a rage coming toward you and you sued just for the mental anguish that occurred. As a matter of fact, you had a post-stress type trauma from it. Would that be a case that you could bring? Otherwise, forget about the pummeling and the hitting and that part, the battery part. What this case would be is not arising from a battery assault, but arising from the letting this person out, knowing that person's rage before they let them out. And I think the word was, as they play it, confront her. And in that confrontation, she comes raging at her. Even to the point maybe she didn't even hit her later. But she did. But the suit is for that trauma itself. Because you can imagine, it's like if I came towards you and said, I'm going to beat you up, you know, and I don't. That's traumatic. And it's hurtful and the things that people go along and tell me. Would that be an act she could be bringing in the tort claim? Your Honor, I think it would depend on sort of the way the Federal Tort Claims Act looks at these kinds of claims is by looking at the tort claim, not the damages that are sought. So if they're seeking damages for mental anguish, that wouldn't be the analysis. It would be, is this really a claim for battery of some kind, libel, slander, misrepresentation? How's the government going to make a person's claim? You can't just say, well, no, no, no, you've got to go all the way to the end. No, this is my claim right here. What happened to me in that trauma from merchant letting that person out and confronting me in a manner that shocks the conscious and is trauma to me. What do you say the government can make? You can say, oh, no, no, no, you've got to plead this whole thing out. You can't have it both ways. It arises out of it. Even when it doesn't arise out of the battery, you're going to make it arise because it's got to go to that end. Something's wrong with that, isn't it? You're right, Your Honor. If it were a claim that doesn't arise out of assault, battery, or any of the torts. It doesn't. The claim is that it arises from her putting her out there. The battery hasn't occurred. Your Honor, if it were a claim that didn't arise out of those particular torts enumerated in the exception, that would be different. It wouldn't be covered by the exception. But I think if a plaintiff is attempting to reframe a claim that is actually an assault or battery claim as a negligent failure to prevent that assault or battery, that's exactly the kind of claim that would be covered by the exception. And that's what this court has said in cases like Talbert and Billups and Popovich. And plaintiff here has said, look, we were trying to plead away from the intentional torts exception. And that's not allowed. But if it's a claim that doesn't result in or arise out of any sort of assault, battery, false imprisonment, all of these torts that are enumerated in 26 ADH, that would be a different kind of claim. But that's not what we have here. It's interesting. Lest it happened to her, she had a better claim. It would be a different case, Your Honor. That's right. It makes no sense. It's how Congress wrote the statute. Oh, yeah, I guess. I understand. Why wouldn't this be, or could it be construed as a negligence claim? Because wouldn't the United States Post Office have a duty to the individuals coming into the post office as invitees? The plaintiff hasn't identified any such duty on the part of the postal service sort of as invitees or otherwise. If the plaintiff had identified some sort of common law duty that extends to a federal government agency like that in a different case, that might be the case. But here the district court and the magistrate court went through the specific sources of duties that plaintiff alleged, which were just the single regulation and the two employment manuals, and said none of these things give rise to this sort of independent duty that would support negligence claim under South Carolina law. And South Carolina law is pretty clear that a public duty on the part of the public government or any authority is only owed to individuals in very limited circumstances. And that's sort of laid out in the magistrate judge's decision discussing Arthur's and other cases of South Carolina law. And so because the way that law works sort of briefly is that there's only a duty on the part of the public entity if the statute regulation or provision at issue lays out a very specific kind of harm that the public entity is supposed to guard against, a specific class of plaintiffs. There is something here. It could have been, it might be, I don't know. But both of these individuals, Mr. Merchant and Peppers, had a history. Peppers himself, Peppers the merchant, had a history. He was actually transferred here to be postmaster because of some misconduct somewhere else, not directly this kind of thing. But she had a history of it, and the post office hired them. And if you could show that they were negligent in the hiring of them, that might be covered. Do you not agree? Because if you hire someone you know to be valid, and as a result of hiring them, that person does just what you know or should know they would do, assault someone. It's not the assault that's the problem with the situation. It's the hiring of them. You can't hire someone who is a bully or someone who assaults, and then when they commit it says, oh, no, they committed assault, I don't owe you anything. When you don't go back and look at the basis upon which they were hired, that's what's being challenged, not the assault itself. Now, that's a consequence of it, because you want damages from it that comes down, but foreseeability and other things come out into play. But at least the initial part of it, again, in the court, where Judge Gregory is going, if you want to create an opportunity, it's not to just call that assault negligence, but to focus on how those two individuals got there and that they were individuals who it was foreseeable that they would commit violent acts, and they did. Would that not be, if that was played in that way, would that not be satisfactory, at least to get beyond the initial pleading stage? No, Your Honor. I mean, negligent hiring, supervision, and retention are all claims that this court has correctly recognized or barred by the discretionary function exception. That's what this court held in Souter in the footnote 6. That's what it reiterated in LaRose. That's right. And that's consistent with the case law of other circuits. In Souter, the court quotes the D.C. Circuit and explains why those kinds of claims are properly barred by the discretionary function exception. And then Judge Gregory's opinion in LaRose explains why that's the law of the circuit. And so I think those claims would be separately barred by the discretionary function exception. What about the negligence of opening the door and allowing this known violent employee to go out into the area where the members of the public were standing? Your Honor, the way this court has explained this jurisprudence is that any sort of claim that there's a sort of negligent failure to prevent an assault or battery, which is similar to what Your Honor is describing. In fact, I think what Your Honor is describing is also precluded by the enumerated torts exception. That's consistent with what this court has said in Tolbert and in the cases that follow it, Billups and Popovich, that these are just ways of escaping 26 ADH's reach and they're also barred by the scope of that exception. That's, again, sort of within the heartland of the exception. And there's no... This complaint in particular actually doesn't even allege that negligence, it sort of says, that merchant knew or should have known that this was going to happen, the United States went beyond mere negligence, that the Postal Service knew or should have known that these actions were going to occur. So all the allegations here are actually alleging all sorts of intentional tortious conduct as well. So I think, fortunately or unfortunately, these claims are all sort of squarely precluded by the enumerated torts exception and then by the discretionary function exception to the extent they bear on hiring and supervision and other sorts of negligence claims in that vein. If this court doesn't have further questions, we'd ask it to affirm the district court. Thank you. Thank you, Counsel. Mr. Hawkins, you have some time reserved. Thank you, Your Honors. I would respond briefly to just a couple of points. One, the duties we were, I think, and the reason that I think we were very thorough in the pleading of our duties and that sort of thing is that we litigate these kinds of cases and try them in state court a lot. And so the duties are usually owed one or more of the following duties and then we give a grocery list. So to argue that there's no duty described or that there's no duty that was pled, I don't think that's correct. And in addition to that, the public duty rule doesn't bar stuff like this. If it did, you could never have a gross negligence claim in state court. The public duty rule does not bar the claim before this court because there's a special relationship between the tortfeasors and the victim. There's an undertaking of a duty both before and after the actual assault occurred or whatever it was. And so I think the duties are sufficiently pled and also saying knew or should have known, that's not pleading an intentional act. You know, we litigate 1983 cases. We all the time have to plead and prove something that's more than mere negligence but not quite intentional. And so something can be, you know, a product of something that somebody didn't do that they should have done or they knew they should have done or should have known they should have done doesn't make it an intentional act. And what we're up against is sort of a, you know, the government says heads we win and tails you lose. Once she puts that shirt on, she can do whatever she wants to anybody she wants as long as it's on the post office floor. Or once there's a battery in the mix, it kills everything else that happened to Judge Bernhardt.  That's the way Congress wrote it. I'm with you on it. But what you just said is probably true. I mean, once she gets up there in that post office, that government employee, you got the Federal Tort Claims Act, you can't get there, and the Westfall Act's not going to let you go to state court, which leaves you with criminal charges because you can be liable for criminal acts now. They don't shield for that. But I don't understand why the district attorney or the district attorney wouldn't prosecute it except they prosecute cases they think they can win. So I don't know. That's why I won't make a decision. I won't comment in terms of why they didn't do it. I'm just saying there is the conundrum. Well, the answer I got on that was, this is not in the record, but the answer I got on that was, well, it was COVID. We couldn't really do anything. And this place, Your Honors, I'm very familiar with it. I grew up near there. Okay, well, you have the record you have, but I'm looking here at Sheridan, and the Supreme Court is talking about the Tort Claims Act not applying when there's a voluntary undertaking to provide care to a person who's visibly drunk and visibly armed. And so is this your argument with regard to the failure to care for your client once she was injured? Well, my argument as it relates to Sheridan, Judge Berner, would be that what Sheridan says is basically the source of the injury doesn't matter at some point. If she were in there and a chandelier fell on her head and he walked out and did the same thing, there would be liability. The interaction had already stopped. His interaction with her at that point doesn't spring from a battery. It springs from breaches of his duties when he goes out and says, I'm not going to call anybody, and you can't call anybody, and does this in front of people. And so if we look at Sheridan in that context, where the Supreme Court said where there may be a duty independent of what happened, it doesn't matter if it was because the government actor took control of a dangerous animal that hurt someone or an explosive device. They still have their independent duties. So in that context, it would be, okay, maybe if she did have the mental state for battery, and if she's not in the proviso, and they say she's out of the suit, you don't have a remedy against her, we could still have a remedy against Merchant from his actions before and after the battery. Because otherwise, the law is, well, once a battery happens, it absolves everybody of liability. And that can't be what Congress intended. I mean, you know, they waived sovereign immunity for a reason, and then they came back and tried to fix more of it. In 1974, when they added the proviso, the old Dale Height case looked at this, and the dissent said, well, there's a discretionary function, so we're barring it, and the dissent said, look, if we don't fix this, then it's not the king can do no wrong, it's just the king can do only small wrongs. And Congress had to come in and make a specific remedy in that context. And so what we're asking the court to do is to look to the language of Bivens. And I know Bivens is a really up skyscraper battle at this point. But look at the language of Bivens, where the Supreme Court repeatedly says, in those three cases and in the 12 cases since, all the way up to Egbert, if there's not another remedy at law, we should find one. That's American jurisprudence, and that's the common law from which it sprang. So that's our argument, Your Honors. Thank you, Counsel. Thank you. Thank you both for your arguments. We're going to ask that the clerk adjourn the court until tomorrow morning, and then we'll come down and greet Counsel. It's on the court. It stands adjourned until tomorrow morning. That's the United States, and it's on the court.
judges: Roger L. Gregory, James Andrew Wynn, Nicole G. Berner